UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DOUGLAS DUSKIN,

                Plaintiff,

v.

KATHLEEN OLSON et al.,

                Defendants.

_____/

Case No. 2:19-cv-155

Honorable Janet T. Neff

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Olson, Yon, Zorich, Vitale, and Wainio. The Court will also dismiss, for failure to state a claim, the following claims: Plaintiff's due process and Fourth Amendment claims against remaining Defendants Axley and Dabb; Plaintiff's equal protection claim against Defendant Axley; and Plaintiff's due process claim against Defendants Wilbanks, Monville, and Paynter.

Plaintiff's Eighth Amendment claims against the remaining Defendants and his retaliation claims against Defendants Axley, Dabb, and Wilbanks remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Cooper Street Correctional Facility (JCS) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Ojibway Correctional Facility (OCF) in Marenisco, Gogebic County, Michigan. Plaintiff sues the following OCF officials: Warden Kathleen Olson; Deputy Warden Michael Yon; Prisoner Counselors (unknown) Zorich and Cory Wainio; Correctional Officers (unknown) Vitale, (unknown) Axley, and (unknown) Dabb; Health Unit Manager (HUM) Janet Wilbanks; and Registered Nurses Jamie Monville and Carol Paynter.

Plaintiff alleges that, on March 16, 2018, he was assigned to a third-shift porter job in the C-Unit of his facility, which is located directly across from the health care unit. On that date, Plaintiff informed his supervisors that his diabetes and medications caused him to become extremely tired, making it difficult or impossible to continue working late at night. Plaintiff asked to be moved to first or second shift. Plaintiff alleges that his supervisors took no action.

On April 17, 2018, Plaintiff allegedly experienced a mild seizure,[1] which caused him to miss reporting for work. Plaintiff complains that Defendant Vitale failed to check on Plaintiff, despite knowing that Plaintiff was a diabetic. Instead, Defendant Vitale wrote a misconduct ticket against Plaintiff for being out of place. Plaintiff alleges that the misconduct charge led to a chain of events, including collusion among Defendants to target and harass Plaintiff,

---

[1] According to the grievance responses that Plaintiff attaches to his complaint, Plaintiff's symptoms did not evidence seizures. However, for purposes of this decision, the Court accepts Plaintiff's allegations as true.

resulting in his being placed in the G-Unit, which is the farthest unit from health care. Plaintiff contends that his transfer to G-Unit was initiated by Defendant Zorich, in retaliation for unspecified actions.

Plaintiff remained in G-Unit from May 3, 2018, to June 25, 2018. Plaintiff alleges that, during this period, he was subjected to harassment and discrimination by all Defendants. He complains that, on May 7, 2018, Defendant Dabb wrongfully confiscated his snack bag. Plaintiff also alleges that Dabb and Axley wrongfully confiscated his snack bag and his purchased food items on other unspecified occasions. He asserts that he suffered seizures because he did not have food available to combat his episodes of low blood sugar.

According to Plaintiff, he suffered bad seizures on May 10, 12, 15, and 16, 2018. He alleges that, on these days, both medical staff and G-Unit officers working third shift left him on his bunk for over two hours. Medical staff allegedly did not perform life-saving measures. They provided a pint of milk and a half-cup of orange juice, but they placed the items on a table that Plaintiff could not reach. Plaintiff acknowledges that another prisoner assisted him to get the items.

Plaintiff next complains that health care began taking $5.00 out of his prison account every time he sought medical care for his seizures, which Plaintiff believed were emergency situations that did not qualify for a co-pay under prison policy. He asserts that Defendants unlawfully took a total of $15.00 from his account.

Plaintiff sent a kite to Defendant Warden Olson, alleging that he was being targeted for discrimination and harassment. Defendant Olson instructed Defendant Yon to call Plaintiff to his office to discuss the allegations. Plaintiff alleges that Defendant Yon called him to the office and spoke with him but took no action to end the harassment.

Plaintiff went to Defendant Wainio's office in G-Unit, explaining that Defendants Axley and Dabb were harassing him by ransacking his living area every day and taking his snack bag and purchased food. Defendant Wainio told Plaintiff that "none of the counselors want you in their units because you're a problem." (Compl., ECF No. 1, PageID.4.) In addition, Plaintiff's brother, at Plaintiff's request, called Defendants Olson, Yon, and Wainio about the ongoing problem. The three officials took no action.

Plaintiff states that he believes that Defendant Wilbanks called up to G-Unit to order Defendants Axley and Dabb to search Plaintiff's cell to ensure that Plaintiff had no food items available. Plaintiff also states his belief that Defendant Wilbanks told Defendants Wainio, Axley, and Dabb that Plaintiff was on a "no steps" restriction, in order to ensure that Plaintiff remained in G-Unit, rather than being transferred to another unit.

According to Plaintiff, on an unspecified occasion, he had a seizure, but health care took a long time to respond. During one seizure, Defendants Monville and Paynter allegedly placed a health care form on Plaintiff's chest and tried to coerce Plaintiff into signing it.

Plaintiff contends that Defendant Axley has "extreme animosity, bilious hatred, and contemptment [sic] towards black prisoners." (*Id.*) In support of his claim, Plaintiff discusses an allegedly false misconduct charge filed against another black prisoner. According to Plaintiff, Defendant Axley was suspended following an investigation of the misconduct charge.

Plaintiff asserts that Defendant Warden Olson was deliberately indifferent to Plaintiff's medical needs and permitted a campaign of harassment by other Defendants, violating Plaintiff's rights under the First, Fourth, Eighth, and Fourteenth Amendments. Plaintiff contends that Defendant Yon colluded with other Defendants by failing to correct the misconducts and by permitting further misconduct filings, again in violation of the First, Fourth, Eighth, and Fourteenth

Amendments. Plaintiff alleges that Defendant Zorich also colluded with other Defendants, by allowing Plaintiff to be terminated from his job and transferred out of C-Unit. Similarly, Plaintiff contends that Defendant Vitale colluded with Defendant Zorich and retaliated against Plaintiff by moving him out of C-Unit. He also alleges that Defendant Wainio colluded with other officers and was deliberately indifferent to the campaign of harassment by Axley and Dabb. Plaintiff complains that both Defendant Axley and Defendant Dabb illegally searched his property and seized his food items and retaliated against him for the exercise of his First Amendment rights. Plaintiff also alleges that the actions of Axley and Dabb violated his rights under the Fourth, Eighth, and Fourteenth Amendments. Plaintiff alleges that Defendant Wilbanks retaliated against him and was deliberately indifferent to his serious medical needs, in violation of the First, Fourth, Eighth, and Fourteenth Amendments when she instructed medical staff that Plaintiff's seizures were not emergencies. Plaintiff also contends that Defendants Monville and Paynter responded to his medical needs slowly, both in retaliation for his complaints and in deliberate indifference to his serious medical needs.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. Defendants Olson, Yon, and Wainio

Plaintiff alleges that he complained to Defendants Olson, Yon, and Wainio about the actions of Defendants Axley and Dabb, who were harassing Plaintiff by ransacking his living area every day and routinely taking Plaintiff's snack bag and commissary food. Plaintiff's brother

also called Defendants Olson, Yon, and Wainio about the ongoing problems. Plaintiff indicates that Defendants Olson, Yon, and Wainio failed to take action to correct the problem.

Plaintiff fails to allege actionable conduct by Defendants Olson, Yon, and Wainio. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendants Olson, Yon, and Wainio engaged in any active unconstitutional behavior. According to Plaintiff's allegations, Defendants merely failed to adequately supervise their subordinates or to take action on Plaintiff's grievances and complaints. Moreover, Plaintiff does not allege active conduct by Defendant Wainio simply because Wainio stated that "none of the counselors want you in their units because you're a problem." (Compl., ECF No. 1, PageID.4.) Even if the allegation suggests that Wainio and others found Plaintiff's constant complaints to be undesirable, the statement does not indicate that

Defendant Wainio engaged in any active conduct against Plaintiff. Accordingly, Plaintiff fails to state a claim against Defendants Olson, Yon, and Wainio.

### B. Defendants Vitale and Zorich

Plaintiff alleges that Defendant Vitale, knowing that Plaintiff was a diabetic, "failed to perform his professional duty" by not checking on Plaintiff when he failed to report to work. (Compl., ECF No. 1, PageID.3.) Instead, Vitale wrote a misconduct ticket against Plaintiff, which resulted in Plaintiff losing his job and ultimately being moved out of C-Unit and into G-Unit. Plaintiff also claims that Defendant Vitale "colluded" with Defendant Zorich to have Plaintiff transferred to a different unit, which caused the loss of his job, and retaliated against Plaintiff for unspecified protected conduct.

#### 1. Eighth Amendment

To the extent that Plaintiff alleges that Defendant Vitale violated the Eighth Amendment by failing to check on Plaintiff, he fails to state a claim. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure

while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). In the context of a medical claim, to satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." "[T]he official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In the instant case, Plaintiff alleges nothing more than that Defendant Correctional Officer Vitale was aware that Plaintiff had diabetes but did not perform a room check when Plaintiff failed to report to work. Accepting that diabetes can, if inadequately treated, be a sufficiently serious medical need, Plaintiff's allegations fall far short of demonstrating that Defendant Vitale had any knowledge that Plaintiff was experiencing objectively serious diabetic symptoms or was at substantial risk from those symptoms, because the failure of a prisoner to report for work is not itself indicative of a health issue. Even more clearly, Plaintiff fails to allege that Defendant Vitale intentionally disregarded such risk. At best, Plaintiff's allegations suggest Defendant Vitale could have been negligent. Negligence is insufficient to support an Eighth Amendment claim. *Farmer,* 511 U.S. at 835.

Moreover, Plaintiff's allegation that he was moved to G-Unit, which was located farther away from health services than C-Unit, utterly fails to support a claim that either Defendant Vitale or Defendant Zorich were deliberately indifferent to Plaintiff's serious medical needs. Plaintiff does not allege any fact that would support a conclusion that health care officials were unable to attend to his medical needs as a result of the move. The mere fact that a unit is located a bit farther from health services, without more, does not demonstrate that Defendants Vitale and Zorich, by placing him in G-Unit, violated the Eighth Amendment.

### 2. Due Process

To the extent that he complains that Defendant Vitale violated his right to due process by writing him a misconduct ticket for being out of place, a Class II misconduct charge, *see* Mich. Dep't of Corr. Policy Directive (PD) 03.03.105, Attach. B, Plaintiff fails to state a claim.

Plaintiff appears to allege a violation of the procedural protections of the Fourteenth Amendment's Due Process Clause. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Therefore, Plaintiff could not have been denied good time or disciplinary credits as a result of his Class II misconduct convictions. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct convictions.

To the extent that Plaintiff claims that Defendant Vitale participated in Defendant Zorich's decision to transfer Plaintiff from C-Unit to G-Unit in violation of Plaintiff's right to due process, he again fails to state a due process claim against either Vitale or Zorich. Plaintiff has no constitutional right to any particular placement or security classification. "[A]n inmate has no

justifiable expectation that he will be incarcerated in any particular prison within a State . . . ." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). By force of logic, Plaintiff has no constitutional interest in being placed in a different unit at the same security level in the same prison facility.

Further, even accepting Plaintiff's conclusory allegation that Defendant Vitale collaborated with Defendant Zorich to terminate Plaintiff's prison job, Plaintiff cannot demonstrate that his job loss deprived him of any protected right. The Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

### 3. Retaliation

Plaintiff alleges that Defendant Vitale, by filing a misconduct charge, retaliated against Plaintiff. He also alleges that Defendant Vitale, acting in conjunction with Defendant Zorich, retaliated against him by moving him to a different unit and terminating his prison employment.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was

engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

　　　　Plaintiff's retaliation claims fail at the first step. He utterly fails to allege that he was engaged in protected First Amendment conduct before Defendant Vitale wrote the misconduct ticket. Plaintiff also fails to allege facts showing how any unspecified protected conduct was related to any action taken by either Defendant Vitale or Defendant Zorich. Indeed, Plaintiff alleges nothing more than that Defendants' conduct was retaliatory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not alleged any facts to support a conclusion that either

Defendant Vitale or Defendant Zorich acted in retaliation. Accordingly, he fails to state a claim against Defendants Vitale and Zorich. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## C. Defendants Axley & Dabb

Plaintiff alleges that Defendants Axley and Dabb harassed him by ransacking his cell and taking his food. He contends that the taking of his snack food caused his blood sugar to fluctuate badly, leading to diabetic seizures, in violation of the Eighth Amendment. Plaintiff also complains that Defendants' actions were done in retaliation for Plaintiff's complaints to health care, in violation of the First Amendment. In addition, Plaintiff contends that the cell searches violated the Fourth Amendment. Further, he suggests that the actions violated the Fourteenth Amendment's Due Process Clause. Finally, he alleges that Defendant Axley's actions were motivated by racial discrimination, in violation of the Equal Protection Clause.

### 1. Eighth Amendment

As the Court earlier held, Eighth Amendment claims are governed by a two-part deliberate-indifference standard, containing both objective and subjective components. *See Farmer*, 511 U.S. at 834; *Estelle v. Gamble*, 429 U.S. 102, 104-05 (1976). The Court concludes that Plaintiff's allegations against Defendants Axley and Dabb are sufficient to state an Eighth Amendment claim.

### 2. Retaliation

Similarly, as earlier discussed, First Amendment retaliation claims are governed by the three-part standard set forth in *Thaddeus-X*, 175 F.3d at 394. Upon initial review, Plaintiff states an actionable retaliation claim against Defendants Axley and Dabb.

### 3. Due process

To the extent that Plaintiff alleges that Defendants Axley and Dabb took his property without due process, his claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its

departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's complaint will be dismissed.

4. Fourth Amendment

To the extent that Plaintiff contends that Defendants violated his Fourth Amendment rights by searching and seizing his property without a valid penological interest, he fails to state a claim. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim similar to Plaintiff's. In that case, a prison official searched a prisoner's cell and destroyed some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed.

First, the Court recognized that, while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523-24 (internal citation omitted). The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527-28.

For similar reasons, the Court held that "the Fourth Amendment does not protect against seizures in a prison cell[.]"  *Id.* at 528 n.8.  According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests."  *Id.*

Applying *Hudson* to Plaintiff's case, the Fourth Amendment did not prohibit Defendants from searching his cell.  Moreover, it did not prevent them from confiscating items in Plaintiff's cell.  Therefore, Plaintiff does not state a Fourth Amendment claim against Defendants Axley and Dabb arising out of the searches of his cell and seizures of his personal food.

5.  Equal protection

Plaintiff claims that Defendant Axley has extreme animosity towards and hatred of black prisoners.  He implies, but does not expressly allege, that Defendant Axley's conduct violated Plaintiff's right to equal protection.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  When a governmental action adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such actions "will be sustained only if they are suitably tailored to serve a compelling state interest."  *City of Cleburne*, 473 U.S. at 440.

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *see also Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal

protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff's equal protection claim is wholly conclusory. Plaintiff alleges that Defendant Axley treated him poorly and that Axley was racially biased, but he does not allege that Axley treated him differently than others who were similarly situated. He also alleges no facts that would suggest such different treatment. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. The Court therefore will dismiss Plaintiff's equal protection claim against Defendant Axley.

In sum, the Court will dismiss Plaintiff's due process and Fourth Amendment claims against Defendants Axley and Dabb and Plaintiff's equal protection claim against Defendant Axley. Plaintiff's Eighth Amendment and retaliation claims against Defendants Axley and Dabb will remain in the case.

### D. Defendants Wilbanks, Monville, & Paynter

Plaintiff alleges multiple claims against Defendant medical providers Wilbanks, Monville, and Paynter. First, Plaintiff alleges that he was deprived of his property without due

process when he was charged a $5.00 co-pay each time he requested medical care for his seizures, despite the fact that he considered the requests for care to be emergencies, for which he should not be required to pay a co-pay under PD 03.04.101, ¶ H(4).  Second, Plaintiff alleges that, on information and belief, Defendant Wilbanks retaliated against him for his complaints by calling up to G-Unit to direct Defendants Axley and Dabb to search Plaintiff's cell and take his food and by telling Wainio, Axley, and Dabb that Plaintiff was on a "no steps" restriction, causing Plaintiff to remain in G-Unit.  Third, Plaintiff complains that Defendants Wilbanks, Monville, and Paynter failed to treat his alleged seizures with the necessary urgency and permitted Plaintiff's blood sugar to drop dangerously low.[2]

### 1.  Due process

Plaintiff claims that Defendants Wilbanks, Monville, and Paynter deprived him of his property without due process by violating policy and improperly charging him co-pays.

Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  Section 1983 is addressed to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

---

[2] Plaintiff also conclusorily claims that Defendant Wibank's actions violated the First and Fourth Amendments. None of Plaintiff's allegations implicate either Amendment.

Moreover, Plaintiff's due process claim, like his due process claim against Defendants Axley and Dabb, is barred by the doctrine of *Parratt*, 451 U.S. 527, which bars due process claims based on unauthorized negligent or intentional deprivations of property, unless the state fails to afford an adequate post-deprivation remedy. *Parratt*, 451 U.S. at 537; *Hudson*, 468 U.S. at 530-36. Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*, 57 F.3d at 479-80; *Gibbs*, 10 F.3d at 378. Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot sustain his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, as the Sixth Circuit has recognized, Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. As a consequence, Plaintiff's due process claim against Defendants Wilbanks, Monville, and Paynter will be dismissed.

### 2. Retaliation & Eighth Amendment

Applying the standards previously discussed, the Court concludes that Plaintiff's allegations are sufficient to support a retaliation claim against Defendant Wilbanks and an Eighth Amendment claim against Defendants Wilbanks, Monville, and Paynter.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Olson, Yon, Zorich, Vitale, and Wainio will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims: Plaintiff's due

process and Fourth Amendment claims against remaining Defendants Axley and Dabb; Plaintiff's equal protection claim against Defendant Axley; and Plaintiff's due process claim against Defendants Wilbanks, Monville, and Paynter. Plaintiff's Eighth Amendment claims against all of the remaining Defendants and his retaliation claims against Defendants Axley, Dabb, and Wilbanks remain in the case.

An order consistent with this opinion will be entered.


Dated:   October 3, 2019                           /s/ Janet T. Neff
                                                   Janet T. Neff
                                                   United States District Judge